Marc Zemel
Savannah Rose
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE,          )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )
                                     )          COMPLAINT
THE TRUSS COMPANY & BUILDING         )
SUPPLY, L.L.C.,                      )
                                     )
                    Defendant.       )
                                     )
_____

## I.    INTRODUCTION

1.     This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant's, The Truss Company & Building Supply, L.L.C. ("The Truss Company"), repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants from The Truss Company's facility in Burlington, Washington to navigable waters.

COMPLAINT - 1

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Soundkeeper's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Soundkeeper requests.

3.    Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified The Truss Company of its violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated and postmarked June 6, 2023 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as <u>Exhibit 1</u>. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue The Truss Company by mailing copies of the Notice Letter to these individuals on June 6, 2023.

4.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6.    At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.    The source of the violations complained of is in Skagit County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western

COMPLAINT - 2

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.    PARTIES

8.    Soundkeeper is suing on behalf of itself and its members.

9.    Soundkeeper is a non-profit corporation organized under the laws of the state of Washington. Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Soundkeeper is a membership organization and has at least one member who is injured by The Truss Company's violations.

10.    Soundkeeper has representational standing to bring this action. Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Defendant's facility, on water quality and aquatic species and wildlife that Soundkeeper's members observe, study, use, and enjoy. Soundkeeper's members are further concerned about the effects of discharges from Defendant's facility on human health. In addition, discharges from Defendant's facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas. Soundkeeper has members who live, work, fish, and recreate around or use Big Indian Slough, Padilla Bay and the Salish Sea which are affected by Defendant's discharges. Soundkeeper's members' concerns about the effects of Defendant's discharges are aggravated by Defendant's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Soundkeeper and its members have been, are being, and will be adversely affected by Defendant's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.    Soundkeeper has organizational standing to bring this action. Soundkeeper has been actively engaged in a variety of educational and advocacy efforts to improve water quality

COMPLAINT - 3

and to address sources of water quality degradation in the waters of Western Washington, including Big Indian Slough, Padilla Bay and the Salish Sea. As detailed herein and in the Notice Letter, Defendant has failed to comply with numerous requirements of its NPDES permit including completing corrective actions, compliance with water quality standards, Stormwater Pollution Prevention Plan maintenance, monitoring, recordkeeping, and permit violation reporting requirements. As a result, Soundkeeper is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Soundkeeper's efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members are also obstructed. Finally, Soundkeeper and the public are deprived of information that influences members of the public to become members of Soundkeeper, thereby reducing Soundkeeper's membership numbers. Thus, Soundkeeper's organizational interests have been adversely affected by Defendant's violations. These injuries are fairly traceable to Defendant's violations and are redressable by the Court.

12. The Truss Company is a corporation authorized to conduct business under the laws of the state of Washington.

13. The Truss Company owns and operates a facility that manufactures engineered wood, roof, and floor trusses and is located at or about 15599 Ashten Rd, Burlington, WA 98233 (referred to herein as the "facility").

## IV.    LEGAL BACKGROUND

14. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

COMPLAINT - 4

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

15.     The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

16.     Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 ISGP Permit"). The previous permit was issued December 3, 2014, became effective January 2, 2015, and expired December 31, 2019 (the "2015 ISGP Permit"). The 2015 ISGP Permit and 2020 ISGP Permit (collectively, "the Permit"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

17.     The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.

COMPLAINT - 5

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

## V.    FACTS

18.    Ecology granted The Truss Company coverage for the facility under the 2015 ISGP Permit under Permit number WAR002037. Ecology granted subsequent coverage under the 2020 ISGP Permit under the same permit number, WAR002037.

19.    The Truss Company discharges stormwater and pollutants associated with industrial activity to Big Indian Slough and Padilla Bay.

20.    The Truss Company's facility is engaged in industrial activities including truss manufacturing services among others. The Truss Company's facility has multiple distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter Big Indian Slough and Padilla Bay.

21.    The Truss Company has violated and continues to violate the "effluent limitations and standards" under the CWA by violating its NPDES Permit. 33 U.S.C. § 1365(f). The Truss Company's violations of the Permit are set forth in sections I through VI of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, The Truss Company has violated the Permit by failing to comply with water quality standards, failing to comply with AKART standards, failing to implement BMPs to control water quality, failing to implement corrective actions, failing to prepare and implement an adequate SWPPP, failing to collect quarterly samples, failing to correctly and timely submit Discharge Monitoring Reports ("DMRs"), failing to correctly submit Annual Reports, failing comply with visual monitoring requirements, failing to record information, failing to retain records, and failing to report Permit violations.

22.    The Truss Company discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permit, including the days on

COMPLAINT - 6

which The Truss Company collected samples with the results identified in Table 1 and 2, and is

likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1: Monitoring Point 1 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) | Chemical Oxygen Demand ("COD") (Benchmark: 120 mg/L) | Total Suspended Solids ("TSS") (Benchmark: 100 mg/L) |
|---|---|---|---|---|---|
| First Quarter 2018 | 32.6 | | 254 | 124 | |
| Third Quarter 2018 | | | 338 | 132 | |
| Fourth Quarter 2018 | | | 191 | | |
| First Quarter 2019 | | 30 | 1394 | 161 | |
| Fourth Quarter 2019 | 29 | | 180 | | |
| Second Quarter 2020 | | | 200 | | |
| Third Quarter 2020 | | | 220 | | |
| Second Quarter 2021 | | | 343 | | |
| Third Quarter 2021 | | | | 150 | 114 |
| Second Quarter 2022 | | | 142 | | |
| Fourth Quarter 2022 | | | 159 | | |
| First Quarter 2023 | | | 239 | | |
| Second Quarter 2023 | | | 282 | | |

**Table 2: Monitoring Point 2 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) | Chemical Oxygen Demand (Benchmark: 120 mg/L) | Total Suspended Solids (Benchmark: 100 mg/L) |
|---|---|---|---|---|---|
| First Quarter 2018 | 64.6 | 20 | 140 | 241 | 134 |
| Third Quarter 2019 | 31 | | | | |
| First Quarter 2020 | 32 | | | | |
| Third Quarter 2020 | 32 | | | | |
| Third Quarter 2021 | 28 | | 340 | | |
| Fourth Quarter 2021 | | | 213 | | |
| First Quarter 2022 | 29 | | 328 | 254 | 142 |
| Second Quarter 2022 | | | 232 | | |
| First Quarter 2023 | | | 244 | | |
| Second Quarter 2023 | | | 188 | | |

23.    The stormwater monitoring data provided in Table 1 and 2 shows benchmark

exceedances included in the stormwater monitoring results that The Truss Company submitted to

Ecology.

COMPLAINT - 7

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

24.     The Truss Company's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Permit Condition S10.A. Discharges from The Truss Company's facility contribute to the polluted conditions of the waters of the state, including the water quality standards of Big Indian Slough, Padilla Bay and the Salish Sea. Discharges from The Truss Company's facility contribute to the ecological impacts that result from the pollution of these waters and to Soundkeeper and its members' injuries resulting therefrom. These requirements and The Truss Company's violations thereof are described in detail in section I.A of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

25.     The Truss Company's exceedances of the benchmark values indicate that The Truss Company is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs. The Truss Company violated and continues to violate Permit Conditions S10 and S3 by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and The Truss Company's violations thereof are described in detail in section I.B and section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference.

26.     The Truss Company has violated and continues to violate the monitoring requirements of Permit Conditions S4, S7, and S9. Permit Condition S4.B requires The Truss Company to sample its stormwater discharges once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls. However, The Truss Company has failed and is failing to monitor discharges from multiple distinct points of discharge. Instead, The Truss Company is only collecting samples from two locations. The Truss Company also failed to collect and analyze stormwater samples in accordance with Permit

COMPLAINT - 8

Condition S4.A at Monitoring Point 1 during the second quarter 2018, second quarter 2019, first quarter 2020 for pH, first quarter 2020 for TSS, fourth quarter 2020, and third quarter 2022. The Truss Company failed to collect and analyze stormwater samples at Monitoring Point 2 during the second quarter 2018, second quarter 2019, first quarter 2020 for pH, first quarter 2020 for TSS, fourth quarter 2020, and third quarter 2022. The Truss Company failed to submit DMRs by the prescribed deadline in Permit Condition S9 for the first quarter 2020 and fourth quarter 2020. The Truss Company failed to comply with visual monitoring requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater Monthly Inspection Reports by qualified personnel each and every month for the last five years. The Truss Company failed and continues to fail to submit Annual Reports for 2017, 2018, and 2019 and The Truss Company has failed to submit an Annual Report by the prescribed deadline of May 15 of the following year for 2020 and 2021, as required by Permit Condition S9. Additionally, The Truss Company has failed to accurately complete the 2022 Annual Report by failing to include the first quarter 2022 zinc exceedance and failing to include any Level Two Corrective Actions or Level Three Corrective Actions, as required by Permit condition S9. These DMR submittals, Annual Report submittals, and monitoring and inspection requirements, and The Truss Company's violations thereof, are described in section III of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. All these violations are reasonably likely to recur.

27.    The Truss Company triggered Level One Corrective Action requirements for each benchmark exceedance identified in Table 1 and 2 above. The Truss Company has violated the requirements of Permit Condition S8.B by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Table 1 and 2 above. These Corrective Action requirements and The Truss Company's violations thereof are described in section IV.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. In addition, these violations are reasonably likely to recur.

28.    The Truss Company triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 and 2 above that occurred in any two quarters of a calendar year. The Truss Company has violated the requirements of Permit Condition S8.C by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year, including the benchmark exceedances listed in Table 1 and 2 above. These violations include The Truss Company's failure to perform Level Two Corrective Action requirements for zinc triggered in third quarter 2018, COD triggered in third quarter 2018, turbidity triggered in fourth quarter 2019, zinc triggered in fourth quarter 2019, turbidity triggered in third quarter 2020, zinc triggered in third quarter 2020, zinc triggered in third quarter 2021, and zinc triggered in second quarter 2022. These corrective action requirements and The Truss Company's violations thereof are described in section IV.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are also reasonably likely to recur.

29.    The Truss Company triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Table 1 and 2 above that occurred in any three quarters

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

of a calendar year. The Truss Company has violated Permit Condition S8.D by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional BMPs, the required submission of an engineering report and Operation and Maintenance Manual, and the required summarization in the Annual Report, each time that its quarterly stormwater sampling results were greater than a benchmark for any three quarters during a calendar year, including the benchmark excursions listed Table 1 and 2 above. These violations include The Truss Company's failure to perform a Level Three Corrective Action for zinc triggered in fourth quarter 2018, zinc triggered in fourth quarter 2021, and zinc triggered in fourth quarter 2022, as indicated by Table 1 and 2 above. These Corrective Action requirements and The Truss Company's violations thereof are described in section IV.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are also reasonably likely to recur.

30.    The Truss Company has failed and continues to fail to comply with recording requirements of Permit Condition S4.B. The Truss Company does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if The Truss Company collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why The Truss Company could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit Condition. These requirements and The Truss Company's violations thereof are described in section V.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

31.    The Truss Company has failed and continues to fail to comply with record keeping requirements of 2015 ISGP Permit Condition S9.C, and 2020 Permit Condition S9.D. The Truss Company does not retain for a minimum of five years a copy of the current Permit, a copy of The Truss Company's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and The Truss Company's violations thereof are described in section V.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

32.    Conditions S9.E of the 2015 ISGP Permit and S9.F of the 2020 ISGP Permit require The Truss Company to take certain actions, including reporting to Ecology, in the event The Truss Company is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. The Truss Company has failed to comply with these requirements of the Permit by failing to report and subsequently correct permit violations, including each and every time The Truss Company failed to comply with corrective action requirements as described above in paragraphs 27-29, each and every time The Truss Company failed to sample a stormwater discharge as described above in paragraph 26, and each and every time The Truss Company discharged stormwater with amounts of pollutants in excess of the Permit benchmarks as described in paragraph 22 above. These violations are reasonably likely to recur.

COMPLAINT - 12

33.     The Truss Company failed to provide Soundkeeper a copy of its SWPPP within fourteen days of Soundkeeper's request contained in the Notice Letter, as required by Permit Condition G.

## VI.    CAUSE OF ACTION

**NPDES Permit Violations**

33.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

34.     The Truss Company's violations of the Permit described herein and in the Notice Letter constitute violations of violations of "effluent standards or limitations" under the CWA per 33 U.S.C. § 1365(a)(1) and (f)(7).

35.     No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

36.     Prior notice of violations and claims was provided to Defendant and others as required.

37.     These violations committed by The Truss Company are ongoing or are reasonably likely to continue to occur. Any and all additional violations of the Permit and the CWA which occur after those described in Soundkeeper's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

38.     Without the imposition of appropriate civil penalties and the issuance of an injunction, The Truss Company is likely to continue to violate the Permit and the CWA to the further injury of Soundkeeper, its members, and others.

## VII.    RELIEF REQUESTED

Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

COMPLAINT - 13

1      A.     Issue a declaratory judgment that The Truss Company has violated and continues

2    to be in violation of the Permit and the CWA

3      B.     Enjoin The Truss Company from operating the facility in a manner that results in

4    further violations of the Permit and the CWA;

5      C.     Order The Truss Company to immediately implement a SWPPP that complies

6    with the 2020 ISGP Permit at the facility;

7      D.     Order The Truss Company to allow Soundkeeper to participate in the

8    development and implementation of The Truss Company's SWPPP and compliance plan;

9      E.     Order The Truss Company to provide Soundkeeper, for a period beginning on the

10    date of the Court's Order and running for three years after The Truss Company achieves

11    compliance with all of the conditions of the Permit, with copies of all reports and other

12    documents which The Truss Company submits to Ecology regarding The Truss Company's

13    coverage under the Permit at the facility at the time these documents are submitted;

14      F.     Order The Truss Company to take specific actions to remediate the environmental

15    harm caused by its violations;

16      G.     Order The Truss Company to pay civil penalties of $64,618 per day of violation

17    for each violation committed by The Truss Company, pursuant to Sections 309(d) and 505(a) of

18    the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

19      H.     Award Soundkeeper its litigation expenses, including reasonable attorneys' and

20    expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any

21    other applicable authorization; and

22      I.     Award such other relief as this Court deems appropriate.

23

24

COMPLAINT - 14

1

RESPECTFULLY SUBMITTED this 5th day of September 2023

2

**Smith & Lowney, PLLC**

3

By:      By: _s/Marc Zemel_
Marc Zemel, WSBA #44325

4

By: _s/Savannah Rose_
Savannah Rose, WSBA #57062

5

Attorneys for Plaintiff

6

2317 E. John St.,
Seattle, WA 98112

7

Tel: (206) 860-2124
Fax: (206) 860-4187

8

E-mail: marc@smithandlowney.com,
savannah@smithandlowney.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT - 15

Exhibit 1

# SMITH & LOWNEY
## —— PLLC ——
### ATTORNEYS AT LAW

June 6, 2023

**Via Certified Mail - Return Receipt Requested**

Managing Agent
The Truss Company & Building Supply, L.L.C.
15599 Ashten Rd
Burlington, WA 98233

Managing Agent
Tri-County Truss L.L.C.
15599 Ashten Rd
Burlington, WA 98233

Managing Agent
The Truss Company & Building Supply, L.L.C.
5814 Graham Ave., Suite 205
Sumner, WA 98390

Managing Agent
Tri-County Truss L.L.C.
1302 Puyallup St, Suite A
Sumner, WA 98390

Re:   **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
      REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

      We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107,
Seattle, WA 98109, (206) 297-7002. Any response or correspondence related to this matter
should be directed to us at the letterhead address. This letter is to provide you with sixty days'
notice of Soundkeeper's intent to file a citizen suit against The Truss Company & Building
Supply, L.L.C. and Tri-County Truss L.L.C. (collectively, "TCT"), under section 505 of the
Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is
also a request for a copy of the complete and current stormwater pollution prevention plan
("SWPPP") required by TCT's National Pollution Discharge Elimination System ("NPDES")
permit.



TCT was granted coverage under the Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 2, 2015 and expired on December 31, 2019, under NPDES No. WAR002037 (the "2015 Permit"). Ecology granted TCT coverage under the current iteration of the ISGP effective January 1, 2020, set to expire on December 31, 2024 (the "2020 Permit"), which maintains the same permit number: WAR002037.

TCT has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. § 1365(f)) including the terms and conditions of the 2015 Permit and the 2020 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from its facility located at or about 15599 Ashten Rd, Burlington, WA 98233 as described herein, to Big Indian Slough and Padilla Bay. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by TCT.

## I.    COMPLIANCE WITH APPLICABLE STANDARDS

### A.  Compliance with Water Quality Standards

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits requires that TCT's discharges not cause or contribute to an excursion of Washington State water quality standards.

TCT discharges to Big Indian Slough then Padilla Bay. TCT discharges stormwater that contains elevated levels of turbidity, copper, zinc, total chemical oxygen demand ("COD"), and total suspended solids ("TSS") as indicated in Table 1 and Table 2 below. Moreover, the discharges TCT has sampled and reported underrepresent the polluted condition of its facility discharges, as explained below. These discharges cause and/or contribute to violations of water quality standards, in Big Indian Slough and Padilla Bay, and have occurred each and every day for the last five years on which there was 0.1 inch or more of precipitation, and continue to occur. *See* WAC 173-201A-260 (including toxics and aesthetics criteria); WAC 173-201A-240 (toxic substances); WAC 173-201A-610 (use designations for marine waters); WAC 173-201-612 (use designations for marine water including Puget Sound); WAC 173-201A-602 (use designations for fresh waters by water resource inventory area, including the Duwamish); WAC

173-201A-240 (toxic substances criteria for copper, zinc, and dissolved oxygen); WAC 173-201A-210 (including criteria for turbidity).

**Table 1: Monitoring Point 1 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) | COD (Benchmark: 120 mg/L) | TSS (Benchmark: 100 mg/L) |
|---|---|---|---|---|---|
| First Quarter 2018 | 32.6 | | 254 | 124 | |
| Third Quarter 2018 | | | 338 | 132 | |
| Fourth Quarter 2018 | | | 191 | | |
| First Quarter 2019 | | 30 | 1394 | 161 | |
| Fourth Quarter 2019 | 29 | | 180 | | |
| Second Quarter 2020 | | | 200 | | |
| Third Quarter 2020 | | | 220 | | |
| Second Quarter 2021 | | | 343 | | |
| Third Quarter 2021 | | | | 150 | 114 |
| Second Quarter 2022 | | | 142 | | |
| Fourth Quarter 2022 | | | 159 | | |
| First Quarter 2023 | | | 239 | | |

**Table 2: Monitoring Point 2 Benchmark Exceedances**

| Quarter in which sample was collected | Turb (Benchmark: 25 NTU) | Cu (Benchmark: 14 µg/L) | Zn (Benchmark: 117 µg/L) | COD (Benchmark: 120 mg/L) | TSS (Benchmark: 100 mg/L) |
|---|---|---|---|---|---|
| First Quarter 2018 | 64.6 | 20 | 140 | 241 | 134 |
| Third Quarter 2019 | 31 | | | | |
| First Quarter 2020 | 32 | | | | |
| Third Quarter 2020 | 32 | | | | |
| Third Quarter 2021 | 28 | | 340 | | |
| Fourth Quarter 2021 | | | 213 | | |
| First Quarter 2022 | 29 | | 328 | 254 | 142 |
| Second Quarter 2022 | | | 232 | | |
| First Quarter 2023 | | | 244 | | |

## B.    Compliance with AKART Standards

Condition S10.C of the Permits requires TCT to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs"). TCT has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and Table 2 and as described below in this Notice of Intent to Sue.

Condition S1.A of the Permits requires that all discharges and activities authorized be consistent with the terms and conditions of the Permits. TCT has violated these conditions by discharging and acting inconsistent with the conditions of the Permits as described in this Notice of Intent to Sue.

II.    **STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS**

TCT is in violation of the Permits' SWPPP provisions as follows:

1. Condition S3.A of the Permits requires TCT to develop and implement a SWPPP that contains specified components. Condition S3.A.2 of the 2015 Permit and Condition S3.A.1 of the 2020 Permit requires the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards. TCT has violated these requirements of the Permits each and every day for the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2. Condition S3.A of the Permits requires TCT to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. TCT has violated these requirements of the Permits each and every day for the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

3. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A of the Permits requires that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. *See Stormwater Management Manual for Western Washington*, July 2019, https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resources/Docs ForDownload/2019SWMMWW.pdf. TCT's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4. TCT's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours, and seasonal variations in business hours or in industrial activities as required.

5. TCT's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific

industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6. TCT's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7. TCT's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8. TCT's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance, and modification.

9. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement mandatory BMPs. TCT is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10. TCT's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs. TCT fails to include operation source control BMPs in the following categories: good housekeeping (including the definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training

will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how TCT will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit). Some of the BMPs that TCT is failing to implement as evidenced by Annual Reports include:

- Failure to conduct adequate sweeping, maintenance, or housekeeping, documented by the 2020 Annual Report and 2021 Annual Report;
- Failure to prevent debris from contaminating the surrounding area, documented by the 2020 Annual Report, 2021 Annual Report and the April 6, 2017 internal ecology email;
- Failure to adequately maintain ponds, tanks/vaults, catch basins, swales, filters, oil/water separators, drains and areas immediately around these structures, documented by 2020 Annual Report and 2021 Annual Report; and
- Failure to provide adequate containment/cover metal and equipment, documented by the 2020 Annual Report and 2021 Annual Report.

11. TCT's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers or surface waters and ground waters of the state, including failing to prevent solids from entering the stormwater and discharging off-site.

12. TCT's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

13. TCT's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

14. TCT's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

15. TCT's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods; and specifies the procedure for submitting the results to Ecology.

### III.    MONITORING AND REPORTING VIOLATIONS

#### A.    Failure to Collect Quarterly Samples

Conditions S4.A and S4.B of the Permits require TCT to collect and analyze a sample for all parameters of its stormwater discharge once during every calendar quarter. TCT violated this requirement by failing to collect and analyze stormwater samples for Monitoring Point 1 during the second quarter 2018, second quarter 2019, first quarter 2020 for pH, first quarter 2020 for TSS, fourth quarter 2020, and third quarter 2022; Monitoring Point 2 during the second quarter 2018, second quarter 2019, first quarter 2020 for pH, first quarter 2020 for TSS, fourth quarter 2020, and third quarter 2022.

Condition S4.B.2.c of the 2015 Permit and S4.B.3.a of the 2020 Permit require TCT to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. TCT has multiple distinct points of discharge where stormwater is leaving the facility that it is not sampling and analyzing appropriately. There are other points of stormwater discharge from the facility and TCT is in violation of these conditions of the Permits by failing to collect and analyze samples from them during every quarter for the last five years. These violations will continue until TCT commences proper monitoring all distinct points of discharge.

#### B.    Failure to Correctly and Timely Submit Discharge Monitoring Reports

Condition S9.A of the 2015 Permit and Condition S9.B of the 2020 Permit require TCT to use Discharge Monitoring Report ("DMR") forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. TCT has violated these conditions by failing to submit a DMR within the time prescribed for the first quarter 2020 and fourth quarter 2020.

#### C.    Failure to Correctly Submit Annual Reports

Condition S9.B of the 2015 Permit and Condition S9.C of the 2020 Permit require TCT to submit a complete and accurate Annual Report to Ecology no later than May 15th of each year. The Annual Report must include corrective action documentation as required in Condition S8.B–D of the Permits. If a corrective action is not yet completed at the time of submission of the Annual Report, TCT must describe the status of any outstanding corrective action. Specific information to be included in the Annual Report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level One, Two, or Three Corrective Actions completed during the previous calendar year, including the dates corrective actions completed, and description of the status of any Level 2 or 3 Corrective Actions triggered during the previous calendar year, including identification of the date TCT expects to complete corrective actions. TCT has violated and continue to violate this condition by failing to submit an Annual Report for 2017, 2018, 2019.

Additionally, TCT has failed to submit an Annual Report by the prescribed deadline for 2020 and 2021. Furthermore, TCT failed to sign the 2021 Annual Report as required by Condition G2 of the Permits. TCT failed to include the Level Two Corrective Actions triggered for turbidity and zinc in the third quarter of 2020 on its 2020 Annual Report. TCT failed to include the fourth quarter 2021 zinc exceedance and failed to include Level Two Corrective Action and Level Three Corrective Actions triggered for Zinc in quarters three and four respectively on its 2021 Annual Report.

### D.    Failure to Comply with Visual Monitoring Requirements

Condition S7.A of the Permits requires that a monthly visual inspection be conducted at the facility by qualified personnel. Condition S7.B of the Permits requires each inspection to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged; observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges; observations for the presence of illicit discharges; a verification that the descriptions of potential pollutant sources required by the permit are accurate; a verification that the site map in the SWPPP reflects current conditions; and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). TCT has violated and continues to violate these requirements because, for the last five years, it has failed to conduct each of the requisite visual monitoring and inspections each and every month.

Condition S7.C of the Permits requires that TCT record the results of each inspection in an inspection report or checklist that is maintained on-site and documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection; the locations inspected; a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits; a summary report and schedule of implementation of the remedial actions TCT plans to take if the site inspection indicates that the facility is out of compliance; the name, title, signature and certification of the person conducting the facility inspection; and a certification and signature of the responsible corporate officer or a duly authorized representative. TCT is in violation of these requirements because, for the last five years, it failed to prepare and maintain the requisite inspection reports or checklists and failed to make the requisite certifications and summaries.

## IV.    CORRECTIVE ACTION VIOLATIONS

### A.    Violations of the Level One Requirements

Condition S8.B of the Permits requires TCT take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range. Condition S5.A Table 2 and Condition S5.B Table 3 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5–9 SU; total copper 14

µg/L; total zinc 117 µg/L; total chemical oxygen demand 120 mg/L; total suspended solids 100 mg/L; and no visible oil sheen.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires that within 14 days of receipt of sampling results that indicate a benchmark exceedance during a given quarter; or, for parameters other than pH or visible oils sheen, the end of the quarter, whichever is later, TCT shall: (1) conduct an inspection to investigate the cause; (2) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (3) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges; (4) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits; and (5) and sign, certify, and fully implement the revised SWPPP in accordance with Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

TCT is in violation of the Level One Corrective Action requirements in the Permits. It failed to implement a Level One Corrective Action within 14 days of receipt or the end of the quarter for each and every benchmark exceedance, including the exceedances in the first quarter 2018, third quarter 2018, fourth quarter 2018, first quarter 2019, third quarter 2019, fourth quarter 2019, first quarter 2020, second quarter 2020, third quarter 2020, second quarter 2021, third quarter 2021, fourth quarter 2021, first quarter 2022, second quarter 2022, fourth quarter 2022, and first quarter 2023 as identified in Table 1 and Table 2 above. TCT's failures to comply with the Level One Corrective Action requirements include the failure to conduct an inspection to investigate the cause; perform the required review; revision and certification of the SWPPP; perform required implementation of additional BMPs; complete the required summarization in the Annual Report; and sign, certify, and fully implement the revised SWPPP in accordance with Condition S3 of the Permit each and every time, during the last five years, when its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range.

### B.    Violations of the Level Two Requirements

Condition S8.C of the Permits requires TCT take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range in any two quarters during a calendar year. The Permits establish the benchmarks applicable to TCT, which are described in section IV.A of this Notice of Intent to Sue.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires TCT: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges; (3) summarize the Level Two Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits; and (4) sign, certify, and implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than August 31 of the following year.

TCT is in violation of the Level Two Corrective Action requirements of the Permits. TCT's continuing violations of these requirements include, but are not limited to, its failure to perform a Level Two Corrective Action for zinc triggered in third quarter 2018, COD triggered in third quarter 2018, turbidity triggered in fourth quarter 2019, zinc triggered in fourth quarter 2019, turbidity triggered in third quarter 2020, zinc triggered in third quarter 2020, zinc triggered in third quarter 2021, and zinc triggered in second quarter 2022 as identified in Table 1 and Table 2 above. TCT is in violation of the Permits for each instance when quarterly stormwater sampling results from the facility were greater than a benchmark or outside the benchmark range for any two quarters during a calendar year and TCT failed to conduct and complete a Level Two Corrective Action for discharges from its facility in accordance with Permits' conditions by, inter alia, completing the required review, revision and certification of the SWPPP; performing required implementation of additional BMPs, including additional structural source control BMPs; and completing required summarization in the Annual Report.

### C.    Violations of the Level Three Requirements

Condition S8.D of the Permits requires TCT take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for any three quarters during a calendar year. The Permits establish the benchmarks applicable to TCT, which are described in section IV.A of this Notice of Intent to Sue.

As described by Condition S8.D of the Permits, when TCT triggers a Level Three Corrective Action, it is required to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level Three Corrective Action (planned or take) in the Annual Report required under Condition S9.B of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced or it new/additional treatment BMPs will be installed. Condition S8.D.2.b of the Permits require that a licensed professional engineer, geologist, hydrogeologist, or certified stormwater quality professional must design and stamp the portion of the SWPPP that addresses stormwater treatment structures or processes.

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, TCT submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code. The engineering report must be submitted no later than the May 15th prior to the Level Three Corrective Action Deadline. The plans and specifications and the operations and maintenance manual must be submitted to Ecology at least 30 days before construction/installation.

Condition S8.D.5 of the Permits requires TCT fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

TCT is in violation of the Level Three Corrective Action requirements of the Permits. TCT's continuing violations of these requirements include, but are not limited to, its failure to perform a Level Three Corrective Action for zinc triggered in fourth quarter 2018, zinc triggered in fourth quarter 2021, and zinc triggered in fourth quarter 2022, as identified in Table 1 and Table 2 above. Indeed, TCT is in violation of the Permits for each instance over the last five years, in which quarterly stormwater sampling results from the facility were greater than a benchmark or outside the benchmark range for any three quarters during a calendar year and TCT failed to conduct and complete a Level Three Corrective Action for discharges from its facility in accordance with Permits' conditions by, inter alia, performing the required review, revision and certification of the SWPPP; complying with the requirement to have a specified professional design and stamp the portion of the SWPPP pertaining to treatment; completing the required implementation of additional BMPs, including additional treatment BMPs; completing the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and including the required summarization in the annual report.

## V.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.    Failure to Record Information

Condition S4.B of the Permits requires TCT record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if TCT collected the sample within the first 30 minutes of stormwater discharge event, an explanation of why TCT could not collect a sample within the first 30 minutes of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. TCT is in violation of these conditions as it has not recorded each of these specified items for each sample taken for the last five years.

### B.    Failure to Retain Records

Condition S9.C of the 2015 Permit and S9.D of the 2020 Permit require TCT to retain for a minimum of five years a copy of the current Permit, a copy of TCT's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. TCT is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation for the last five years.

## VI.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.E of the 2015 Permit and Condition S9.F of the 2020 Permit require TCT to take certain actions in the event it is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment or exceed any numeric effluent limitation in the permit. In such circumstances, TCT must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and TCT must immediately notify the appropriate Ecology regional office of the failure to comply. TCT must then submit a detailed written report to Ecology, including specified details, within 5 days of the time TCT became aware of the circumstances unless Ecology requests an earlier submission.

TCT routinely violates these requirements, including each and every time it failed to comply with the corrective action requirements described in section IV of this Notice of Intent to Sue, and each and every time TCT discharged stormwater with concentrations of pollutants in excess of the Permits' benchmarks, as described in Table 1 and Table 2 above. All these violations may endanger human health or the environment.

## VII.    REQUEST FOR SWPPP

Pursuant to Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, Soundkeeper Waterkeeper hereby requests that TCT provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should TCT fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the 2015 Permit and Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

## VIII.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Soundkeeper. These violations are ongoing. Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Sections 309(g)(2)(A) and 404(s)(4) of the CWA, 33 U.S.C. §§ 1319(d) and 1344(s)(4), each of the above-described violations subjects the violator to a penalty of up to $64,618 per day for each violation. In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against TCT under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

**SMITH & LOWNEY, PLLC**

By: _s/Savannah Rose_
Savannah Rose
Richard A. Smith
Katelyn Kinn

cc:    Michael Regan, Administrator, U.S. EPA
       Casey Sixkiller, Region 10 Administrator, U.S. EPA
       Laura Watson, Director, Washington Department of Ecology
       National Registered Agents, Inc. (711 Capitol Way S Suite 204, Olympia, WA 98501)